JOHN BATES AND VIRGINIA BATES, PLAINTIFFS-APPEL-
LANTS, v. VINCENT J. GAMBINO, DEFENDANT-RESPON-
DENT.

Superior Court of New Jersey
Appellate Division

Submitted March 3, 1975—Decided March 17, 1975.

Before Judges MICHELS, MORGAN and MILMED.

*Messrs. Stein, Stein, Hughes & McGuire,* attorneys for appellants (*Mr. John L. McGuire, Jr.,* of counsel).

*Messrs. Pisano & Triarsi,* attorneys for respondent (*Mr. John S. Triarsi,* of counsel).

The opinion of the court was delivered by

MORGAN, J. A. D. Plaintiffs, husband and wife, sought money damages from defendant, a licensed insurance broker, as compensation for defendant's alleged lack of diligence in procuring requested insurance coverage for their home which was destroyed by fire on June 16, 1970. The case was tried without a jury and plaintiffs appeal from a judgment entered in defendant's favor.

The business relationship between plaintiffs and defendant broker had its inception in 1964 when defendant served as a real estate agent in connection with plaintiffs' purchase of their home at 1006 Williams Street in Elizabeth, New Jersey. At the time of this purchase defendant, an insurance broker of 20 years experience, secured fire insurance coverage on the premises. That policy, placed with the Firemen's Insurance Company of Newark, expired on February 6, 1967. Coverage with Firemen's was renewed for the period commencing February 6, 1967 and expiring February 6, 1970. Before this second policy was scheduled to expire the carrier notified defendant that it declined to further insure plaintiffs' home. Accordingly, and on January 20, 1970, defendant attempted to obtain other insurance on plaintiffs' behalf with the Motor Club of America. This attempt was un-

successful, and when defendant received notice of the rejection of submitted application he wrote plaintiffs on January 27, 1970 to advise them that their homeowner's policy with Firemen's would expire on February 6, 1970 and that he had been unsuccessful in securing replacement coverage with another company. Defendant also advised them to contact another broker.

It was not until May 9, 1970, over three months later, that plaintiff husband met with defendant in an attempt to obtain coverage for his home. He had been without coverage from February 6, 1970, the date his previous policy expired, until the date of the meeting. At the meeting of May 9, 1970 defendant explained to him two alternative methods of obtaining insurance. The first alternative was to procure surplus or excess line insurance, which was rejected as being too costly. Defendant had explained that such insurance would cost him approximately $200 a year, and if he could make a down-payment of a third of that amount, the rest could be financed. Plaintiff did not, however, have the amount of money necessary for the down-payment. The second alternative, accepted by plaintiff, was to make application to the New Jersey Insurance Underwriters Association for coverage. Under that alternative defendant explained that there would be a four to six-week delay before any policy would issue. Plaintiff indicated to defendant that he would accept the delay because by the time the policy issued he would have the money to pay for it.

It should be noted, parenthetically, that money seemed to be a perennial problem in the relationship between plaintiffs and defendant. Plaintiffs would fall behind in their premium payments, and defendant would frequently make payments on their behalf. On two occasions defendant requested cancellation of their policies, only to seek reinstatement after sufficient payment was made. At the meeting of May 9, 1970 plaintiff first paid the $21 balance due on the policy which had expired over three months previously.

At any rate, it is undisputed that defendant submitted plaintiffs' application to the Association and it was received by that organization on May 12, 1970. Plaintiffs' house was destroyed by fire on June 16, 1970 and the application for insurance was approved and notice sent to defendant on June 28, 1970, 12 days after the fire. Plaintiffs were at the time of the fire uninsured.

The New Jersey Insurance Underwriting Association, to which defendant made application on plaintiffs' behalf, is a creature of statute, *N. J. S. A.* 17:37A–1 *et seq.,* which was designed to insure a market to sorely needed and unavailable fire and extended coverage insurance to urban homeowners, among others. The Commissioner of Banking and Insurance was vested with authority to adopt rules and regulations in implementation of the essential goals of the enactment. *N. J. S. A.* 17:37A–26; *New Jersey Ins. Underwriting Ass'n v. Clifford,* 112 *N. J. Super.* 195, 200–203 (App. Div. 1970).

Pursuant to this rule-making power the Commissioner of Banking and Insurance promulgated a series of rules and regulations which the trial judge found was in defendant's possession at the time application was made to the Association. Among the rules adopted was the following one:

H. *Temporary Binder*

In the event the applicant is not notified by the Association of the acceptance or declination of the coverage within twenty-five days after receipt of the application by the Association, the applicant may obtain a temporary binder.

Is order to facilitate the prompt processing of the requests for temporary binders the applicant shall submit to the Association a copy of the application showing file number assigned and date application was received by the Association along wtih the estimated annual premium.

The estimated annual premium shall be based on the applicable existing specific or class rate, including civil disorder loadings and surcharge.

Defendant claims he knew nothing of this rule and consequently was unaware that a temporary binder could have been issued when plaintiffs were not notified of acceptance

or declination within 25 days after receipt of the application. Hence, under this rule, temporary coverage was available on June 6, 1970, about ten days before the destruction of plaintiffs' home. Failure to advise plaintiffs of the immediate availability of coverage on June 6 is the omission charged as being negligent.

In a letter opinion the trial judge entered judgment for defendant on the ground that plaintiffs knew they were uninsured at the time of the fire; that defendant had told them they would be uninsured until the Association issued its policy, which would occur between four and six weeks from the date the application was submitted, and that plaintiffs assented to the delay because by that time they would have money to pay for the policy. In these circumstances, said the trial judge, defendant was under no duty to plaintiff. The judge said:

> Here the broker never indicated that he was effecting insurance or that he could effect insurance. Absent that and any reliance by the applicant to the contrary, no liabiilty can be imposed on the defendant.

It is with respect to this expressed basis for decision that we conclude the trial court erred.

The nature and extent of the duty owed by insurance brokers to their principals was comprehensively described in *Rider v. Lynch*, 42 *N. J.* 465 (1964), in the following terms:

> One who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. He is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby. *Barton v. Marlow*, 47 *N. J. Super.* 255, 259 (App. Div. 1957); *Marano v. Sabbio*, 26 *N. J. Super.* 201, 205–206 (App. Div. 1953); *Milliken v. Woodward*, 64

*N. J. L.* 444, 448 (Sup. Ct. 1900) ; 3 *Couch, Insurance* (2d ed. 1960), §§ 25:32, 25:36, 25:37, pp. 329, 335, 336; 16 *Appleman, Insurance Law and Practice*, §§ 8841, 8843, pp. 300, 306 (1944). [at 476–477]

In this case the central issue posed was whether defendant possessed "the degree of skill and knowledge requisite to the calling" when he admittedly did not know of the availability of temporary coverage following 25 days of inaction on the application and therefore failed to notify plaintiffs of this opportunity for immediate coverage. Contrary to the decision below, defendant was under a duty to know the rules governing the Association's issuance of policies which the judge found were in defendant's possession at the time and to advise plaintiffs, whom he then knew were uninsured, that immediate coverage was available. His admitted failure to know and to advise did constitute a breach of duty even though plaintiffs, too, knew they were, at the time, uninsured. They thought they were uninsured because immediate coverage was unavailable. That information was inaccurate insofar as it pertained to the period of time following 25 days of inaction after the Association's receipt of plaintiffs' application. Hence, the trial court was incorrect in concluding that the element of reliance was absent. In these circumstances judgment of plaintiffs' favor for the damages suffered as a result of defendant's dereliction in duty should have been entered as a matter of law.

Defendant argues that plaintiffs would have been unable to pay for this coverage at that time since defendant was informed that they would first have the money at the end of the anticipated waiting period. This contention lacks merit. Plaintiffs ordered the insurance and it cannot be assumed, in light of their expressed desire for coverage, that they were in no position to make payment for it. Had defendant relied upon their representation of temporary poverty in refraining from advising them of immediate coverage, a different question would have been presented. Here, his failure to advise

was caused by his own admitted ignorance of the rules which could have afforded plaintiffs immediate coverage.

The fact that plaintiffs permitted their home to be uninsured from the date the former policy expired, February 6, 1970, until the date they consulted defendant in an attempt to obtain insurance, is not evidential of contributory negligence on their part. Plaintiffs were under no duty to insure their home. The choice of whether or not to do so was theirs to make and they cannot, therefore, be charged with any dereliction in duty in choosing to assume the risks of having their home uninsured for that period of time.

Judgment is reversed and the cause remanded with instructions that the trial court enter judgment in favor of plaintiffs and assess damages.

We do not retain jurisdiction.